1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

James Staples,

                Plaintiff,

v.

Acting Commissioner of the Social Security Administration,

                Defendant.

No. CV-17-03253-PHX-ESW

**ORDER**

       Pending before the Court is James Staples' ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his application for supplemental security income. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 11).

       After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 15, 16, 17), the Court finds that the Administrative Law Judge's ("ALJ") decision contains harmful legal error. For the reasons explained herein, the decision is reversed

and the case is remanded to the Commissioner of Social Security for further proceedings.

## I. LEGAL STANDARDS

### A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id*.

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 416.920(d). If the impairment meets or equals one

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

---

[2] *Parra*, 481 F.3d at 746.

1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff, who was born in 1976, has no past relevant work. (A.R. 37, 88). On August 19, 2013, Plaintiff applied for supplemental security income, alleging disability beginning on January 1, 1988. (A.R. 88, 197). Social Security denied the application on December 18, 2013. (A.R. 119-22). In July 2014, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits. (A.R. 127-29). Plaintiff sought further review by an ALJ, who conducted a hearing in March 2016. (A.R. 49-86). In a May 20, 2016 decision, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 19, 2013. (A.R. 39). The Appeals Council denied Plaintiff's request for review. (A.R. 1-8). On September 20, 2017,

Plaintiff initiated this action requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 19, 2013, the application date. (A.R. 31). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: "Asperger's syndrome/autism, pervasive developmental disorder, mood disorder (not otherwise specified), migraine headaches, and atypical seizures/pseudoseizures (20 CFR 416.920(c))." (A.R. 31). This determination is unchallenged.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 32). Neither party disputes the ALJ's determination at this step.

#### 4. Steps Four and Five: Capacity to Perform Work

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> the claimant can never climb ladders, ropes, and scaffolds; can occasionally balance; must avoid concentrated exposure to loud noise intensity environments; must avoid hazards such as unprotected heights and moving machinery; cannot perform driving duty jobs; can understand, remember, and carryout simple instructions and perform simple, routine,

>repetitive tasks with occasional changes in the work setting; and can have occasional, superficial interaction with the public and co-workers, with no crowd contact.

(A.R. 33).

As Plaintiff has no past relevant work, the ALJ proceeded to Step Five and determined whether Plaintiff could perform any work existing in significant numbers in the national economy. (A.R. 37-38). Based on the assessed RFC and the testimony of the Vocational Expert ("VE"), the ALJ concluded that Plaintiff is capable of performing the requirements of representative unskilled occupations such as hand packager and sandwich maker. (A.R. 38). Plaintiff disputes this determination, asserting that (i) the ALJ improperly weighed the opinions of his treating physician and (ii) the job requirements of the hand packager and sandwich maker positions conflict with Plaintiff's assessed RFC. (Doc. 15 at 6-12).

### C. Analysis

#### 1. The ALJ Did Not Improperly Weigh the Opinion of Plaintiff's Treating Physician, Dr. Raun Melmed, M.D.

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole. 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

The ALJ reviewed records from Plaintiff's treating physician Raun Melmed, M.D. (A.R. 37). The parties agree that the ALJ could not reject Dr. Melmed's opinions without first providing specific and legitimate reasons supported by substantial evidence in the record. (Doc. 15 at 9-12; Doc. 16 at 8).

On July 11, 2013, Plaintiff went to Dr. Melmed's office for a "developmental consultation." (A.R. 345-49). In his report summarizing the consultation, Dr. Melmed stated that Plaintiff's symptoms, such as hyperreactivity to sensory responses, have caused Plaintiff "to have significant impairment in social, occupations, and interactional areas of current functioning and are not better explained by intellectual disability or global developmental delay." (A.R. 347). Dr. Melmed noted that "there is no accompanying intellectual impairment and his brightness is one of his absolute strengths. There is no accompanying language impairment or significance either and the disorder is not associated with any known medical or genetic condition." (A.R. 347-48). Dr. Melmed further stated that Plaintiff "has been disabled by his condition and, at this point, has extreme impairment in global functioning to the point that he has never been employed or had any social interactions with others." (A.R. 348).

The ALJ gave "little weight" to Dr. Melmed's statement that Plaintiff has been "disabled by his condition," explaining that it was made prior to the application date and "therefore has limited relevance in determining the claimant's condition since the application date." (A.R. 37). The ALJ also explained that (i) the record reflects significant improvement since July 2013; (ii) Dr. Melmed made the statements "in what appears to be an initial consultation"; (iii) "Dr. Melmed did not conduct his own testing, but relied almost entirely on the statements of claimant and claimant's father as well as the reports of others"; and (iv) "the statement that the claimant has never had any social

interaction with others is inaccurate as the record suggests the claimant previously had friends (Exhibit 4F/2) . . . ." (A.R. 37).

Respondents correctly observe that Plaintiff does not address the ALJ's conclusion that Dr. Melmed's July 2013 letter is inconsistent with the record. (Doc. 16 at 9 n.3); *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issue that plaintiff did not argue with any specificity in plaintiff's briefing). That conclusion is supported by substantial evidence and constitutes a specific and legitimate reason for rejecting Dr. Melmed's July 2013 report. (*See, e.g.*, A.R. 426, 428, 431, 432, 660, 687). Therefore, to the extent that the ALJ's other reasons for rejecting the July 2013 report are invalid, the error is harmless. *See Molina*, 674 F.3d at 1115 (an ALJ's error in providing both valid and invalid reasons for a finding is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion).

In a February 12, 2014 letter, Dr. Melmed stated that Plaintiff "has been diagnosed as having Autistic Disorder. Co-occuring challenges are also evident. These issues significantly impact his capacity to work at this point, and a vocational rehabilitation program is strongly recommended for him." (A.R. 693). The ALJ gave Dr. Melmed's letter "some weight." (A.R. 37). The ALJ explained that Dr. Melmed's statement regarding the degree of impact of Plaintiff's conditions is vague. (*Id.*). The ALJ stated that "in so far as the statement means that the claimant's condition significantly limited his ability to perform basic work activities (the definition of severe at Step 2), it is given significant weight as it is consistent with the treatment evidence . . . . However, this evidence does not support a conclusion that the claimant has disabling impairments." (*Id.*). The Court finds that the ALJ reasonably found that Dr. Melmed's July 2014 letter is vague. This is a specific and legitimate reason for rejecting the opinion. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician,

including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ further noted that "[t]he recommendation of vocational rehabilitation implies the doctor believed the claimant could work with treatment." (A.R. 37). This is a valid reason for not giving controlling weight to Dr. Melmed's statements. The ALJ is responsible for resolving ambiguities in the record and "is entitled to draw inferences 'logically flowing from the evidence.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Magallanes*, 881 F.2d at 750. The ALJ also observed that Plaintiff "acknowledged improvement just a few months after [Dr. Melmed's] letter, which was within one year after he filed his application." (*Id.*). This is another specific and legitimate reason supported by substantial evidence for discounting Dr. Melmed's July 2014 letter. The Court does not find that the ALJ improperly discounted Dr. Melmed's opinions expressed in his July 2014 letter.

For the above reasons, the Court does not find that the ALJ improperly weighed Dr. Melmed's opinions.

### 2. Conflicts Between Jobs Identified at Step Five and Plaintiff's RFC

At Step Five of the disability analysis, an ALJ must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995)). In making a disability determination, an ALJ relies primarily on the *Dictionary of Occupational Titles* (the "DOT") for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In addition to the DOT, an ALJ "also uses testimony from vocational experts to obtain occupational evidence." *Id.* at 1153. Generally, the VE's testimony should be consistent with the DOT. *Id.*

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is

required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

Plaintiff contends that his assessed RFC conflicts with the DOT's descriptions of the hand packager and sandwich maker positions. Plaintiff argues that (i) both positions require a reasoning level beyond his capabilities; (ii) the hand packager position involves a noise intensity that conflicts with the provision in his RFC that he avoid concentrated exposure to loud noise; and (iii) the sandwich maker position requires interpersonal contact that conflicts with the provision in his RFC that limits him to occasional, superficial interaction. (Doc. 15 at 6-8).

### i. Required Reasoning Levels of Hand Packager and Sandwich Maker Positions

"The DOT describes the requirements for each listed occupation, including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin*, 778 F.3d at 846 (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels includes the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* (citing DOT, App. C, 1991 WL 688702). The DOT defines Reasoning Levels 1 through 3 as follows:

> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form**.** Deal with problems involving several concrete variables in or from standardized situations.

> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

> Level 1: Apply commonsense understanding to carry out simple one– or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, App. C, 1991 WL 688702 (emphasis added).

Plaintiff's RFC provides that he has the ability to "understand, remember, and carry out [only] simple job instructions" and "perform simple, routine, repetitive tasks." (A.R. 33). Plaintiff contends that this limitation conflicts with the VE's testimony that Plaintiff could perform the job of a hand packager and sandwich maker, both of which have a Reasoning Level 2. (Doc. 15 at 8). This argument is without merit as "[c]ourts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two." *Xiong v. Comm'r Soc. Sec. Admin.*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, *6 (E.D. Cal. July 22, 2010); *see also Zavalin*, 778 F.3d at 846-47 (finding that Level 2 Reasoning is more consistent with limitation to "simple, routine, and repetitive work" than Level 3 Reasoning); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of . . . Reasoning Level 2 jobs."); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) ("[T]here was no conflict between the ALJ's step five determination that [the claimant] could complete only simple tasks and the vocational expert's testimony that [the claimant] could do jobs . . . categorizes at 'Reasoning Level 2.'"); *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (finding there is no direct conflict between "carrying out simple job instructions" and occupations involving Reasoning Level Two); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("level-two reasoning appears more consistent with" simple and routine work tasks); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive.").

### ii. Apparent Conflict Between Noise Level of Hand Packager Position and Plaintiff's RFC

As mentioned, Plaintiff's assessed RFC indicates that Plaintiff should avoid concentrated exposure to loud noise intensity environments. (A.R. 33). The DOT ranks noise intensity as follows:

| | | |
|---|---|---|
| 1 | Very Quiet | isolation booth for hearing test; deep sea diving; forest trail |
| 2 | Quiet | library; many private offices; funeral reception; golf course; art museum |
| 3 | Moderate | business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours |
| 4 | Loud | can manufacturing department; large earth-moving equipment; heavy traffic |
| 5 | Very Loud | rock concert—front row; jackhammer in operation; rocket engine testing area during test |

U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. D, D–2 (1993) (SCO).

The hand packager position has a noise rating of "loud." DOT 920.587-018, 1991 WL 687916. Plaintiff asserts that this conflicts with Plaintiff's RFC. (Doc. 15 at 7). The Court finds that there is an apparent conflict between Plaintiff's RFC and the noise level of the hand packager position as detailed in the DOT. To reiterate, when a conflict between a VE's testimony and the DOT arises, the ALJ must make an inquiry with the VE and then determine whether the VE's "explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Johnson*, 60 F.3d at 1435. Because the ALJ did not clarify the apparent conflict between Plaintiff's RFC and the DOT with respect to the hand packager position, the VE's testimony cannot serve as substantial evidence supporting the ALJ's Step Five determination that Plaintiff could be employed as a hand packager.

### iii. Apparent Conflict Between Sandwich Maker Position and Plaintiff's Limitations Regarding Interpersonal Interaction

Plaintiff's RFC provides that Plaintiff "can have occasional, superficial interaction with the public and co-workers, with no crowd contact." (A.R. 33). At the hearing, the ALJ clarified to the VE that "superficial interaction" is contact "that's not necessarily related to job duties" and "just occasional." (A.R. 82). The DOT explains that the sandwich maker position entails "[r]eceiving sandwich orders from customers." DOT 920.587-018, 1991 WL 687916. The Court finds that there is an apparent conflict between Plaintiff's RFC and the requirements of the sandwich maker position. As Plaintiff explains, "[i]t is difficult to imagine a kitchen/restaurant environment where a sandwich maker was not required to have *any* interaction with coworkers that is not related to job duties as the ALJ's RFC provides." (Doc. 15 at 7-8) (emphasis in original). Neither the VE nor the ALJ reconciled this apparent conflict. Consequently, the VE's testimony may not serve as substantial evidence supporting the ALJ's Step Five determination that Plaintiff could be employed as a sandwich maker. *See Pardue v. Astrue,* 2011 WL 5520301 at *5 (C.D. Cal. Nov. 14, 2011) (finding inconsistency between DOT description of job of cleaner and ALJ's finding that claimant should not have contact with public).

### D. The Case Will Be Remanded for Further Proceedings

Ninth Circuit jurisprudence "requires remand for further proceedings in all but the rarest cases." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014). "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.

The Court has found that the ALJ has erred at Step Five by failing to reconcile the apparent conflicts between the hand packager and sandwich maker positions and Plaintiff's RFC limitations. As this is an outstanding issue that must be resolved through further proceedings, the Court will remand this matter to the Commissioner. *Lamear v. Berryhill,* 865 F.3d 1201, 1206 (9th Cir. 2017) (remanding case "so the ALJ can ask the

VE to reconcile" jobs that the ALJ found plaintiff could perform with the plaintiff's physical limitations).

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing the decision of the Commissioner of Social Security and remanding this case to the Commissioner for further proceedings in accordance with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 3rd day of July, 2018.

_____
Eileen S. Willett
United States Magistrate Judge